United States District Court
Southern District of Texas
**ENTERED**
June 29, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SWN PRODUCTION COMPANY, LLC, *et al.*, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-25-3208 |
| v. | § § | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

This insurance dispute is the latest litigation arising out of a 2021 workplace accident in Louisiana.  The plaintiffs, SWN Production, LLC (Louisiana), an oil and gas exploration company; Independence Contract Drilling, Inc., a drilling contractor that provided a drilling rig and crew; and Pipe Pros, which provided casing-running services, were conducting operations on a wellsite in Louisiana when a Pipe Pros employee was injured while working on the site.  SWN and Independence Contract Drilling allege that Pipe Pros and its insurer, St. Paul Fire and Marine Insurance Company, breached the contractual duties they owed under a Master Service Agreement by failing to provide a defense, indemnity, and additional-insured protection to SWN and Independence Contract Drilling in the Louisiana state-court lawsuit brought by the injured employee.  SWN and Independence Drilling have moved for summary judgment, (Docket Entry No. 23), and St. Paul has cross-moved, (Docket Entry No. 25).

Based on the pleadings, the motion, the record, the oral argument, and the applicable law, the court grants summary judgment to SWN and Independence Contract Drilling and denies summary judgment to St. Paul.  The reasons for these rulings are explained below.

I.      **Background**

In April 2019, Indigo Minerals, which was later acquired by SWN, and Pipe Pros LLC, which was later acquired by TRK Enterprises, entered into a Master Service Agreement (MSA). (Docket Entry No. 25-2).  SWN and TRK—Pipe Pros identifies itself as TRK Enterprises Inc. d/b/a Pipe Pros—are the successors-in-interest to the MSA.  The MSA defined "Company Group" to include Indigo's employees, contractors, and subcontractors.  (*Id.* ¶ 2(C)).  The MSA required each party to defend and indemnify the other for injuries to its own employees and subcontractors. (*Id.* ¶ 11).  The MSA also contained a choice-of-law and venue clause stating that the parties consented to jurisdiction in Texas and venue in Houston and that the laws of Texas "shall apply exclusive of (and without regard to) any principles of conflicts of laws that would require application of the substantive laws of another jurisdiction."  (*Id.* ¶ 23(B)).

In December 2021, SWN, Independence Contract Drilling, and Pipe Pros were drilling on a wellsite in Louisiana.  On December 6, 2021, Joshua Bowman, a Pipe Pros employee, was injured while working on the wellsite.  Bowman sued SWN and Independence Contract Drilling for his injuries. (Docket Entry No. 23-9 at 3).  SWN demanded a defense and indemnity from Pipe Pros under the MSA.[1]  (*Id.* at 1).  St. Paul, Pipe Pros's insurer, denied the demand. (Docket Entry No. 23-13).  St. Paul took the position that because the loss occurred in Louisiana, the contractual indemnity obligation was void under the Louisiana Oilfield Indemnity Act (LOIA).  The Act declares oilfield indemnity clauses void and unenforceable if they operate in favor of a negligent

---

[1] Pipe Pros was insured by St. Paul.  (Docket Entry No. 28-1).  Pipe Pros had obtained additional-insured commercial general liability coverage and excess liability coverage though JH Blades (which listed a Houston address) for SWN and Independence Contract Drilling using an insurance broker in Houston. (Docket Entry Nos. 23-6, 23-7).

party.[2]  (*Id.*).  St. Paul concluded that the *Marcel* exception did not apply.  Under that exception, "when the principal pays the entire cost of its own insurance coverage by securing an endorsement naming it as an insured in the contract or policy, the purposes of the LOIA are not frustrated, and the insurance coverage is valid and enforceable."  *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 481 (5th Cir. 2002).

St. Paul sued SWN and Independence Contract Drilling in Louisiana state court seeking a declaratory judgment that St. Paul owed no coverage under Louisiana law.  That case is still pending.[3]  (Docket Entry No. 25-5).  Meanwhile, in June 2025, SWN and Independence Contract Drilling sued Pipe Pros and St. Paul in Texas state court, alleging that they breached the MSA by failing to provide the defense, indemnity, and additional insurance protection owed to them in the *Bowman* case.  (Docket Entry No. 1-6).  St. Paul timely removed based on diversity jurisdiction. (Docket Entry No. 1).  After removal, the *Bowman* case pending in Louisiana state court settled for a confidential amount.  (Docket Entry No. 23-14 at 7).  SWN, Independence Contract Drilling, Pipe Pros, and St. Paul agreed that SWN and Independence Contract Drilling would pay half the settlement amount and St. Paul would pay the other half.  (Docket Entry No. 23-1 at 12; *see also* Docket Entry No. 20 ¶ 4.13; Docket Entry No. 22 ¶ 4.13).  The parties reserved their rights. (Docket Entry No. 23-1 at 12).

In this litigation, SWN and Independence Contract Drilling now seek to recover their half of the settlement and the attorneys' fees and defense costs incurred both in the *Bowman* litigation and this case.  (Docket Entry No. 23-1 at 12; Docket Entry No. 20).  The parties have filed cross-

---

[2] *See* LA. REV. STAT. ANN. § 9:2780.

[3] On May 1, 2026, this court denied St. Paul's request to transfer this case to Louisiana state or to abstain in favor of the active Louisiana litigation.  (Docket Entry No. 39).

motions for summary judgment.[4]  (Docket Entry Nos. 23, 25).  SWN and Independence Contract Drilling argue that Texas law applies and that St. Paul and Pipe Pros owe them a defense, indemnity, and additional-insured obligations for the *Bowman* litigation.  (Docket Entry No. 23). Pipe Pros and St. Paul argue that Louisiana law applies and that the LOIA voids the obligations that SWN and Independence Drilling assert.  (Docket Entry Nos. 25, 30).  There is no disagreement among the parties that if Texas law applies, St. Paul and Pipe Pros breached the contract, while if Louisiana law applies, they did not.  (*See generally* Docket Entry Nos. 23, 25, 28, 29, 30).

## II.      The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine

---

[4] Although St. Paul was the only defendant to technically file a motion for summary judgment, Pipe Pros filed a response in support of St. Paul's motion.  (Docket Entry No. 30).

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250).

5

### III.    Analysis

### A.    Judicial Estoppel

St. Paul and Pipe Pros first argue that SWN and Independence Contract Drilling are judicially estopped from arguing that Texas law applies because they argued that Louisiana law applied in the motion for summary judgment they filed in the underlying *Bowman* litigation. (Docket Entry No. 25 at 9; Docket Entry No. 30 at 6). "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir. 2011) (quoting reference omitted). "It is 'an equitable doctrine invoked by a court at its discretion' to 'protect the integrity of the judicial process.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). "Two elements are necessary for judicial estoppel: (1) the estopped party's position must be 'clearly inconsistent with its previous one,' and (2) 'that party must have convinced the court to accept that previous position.'" *Owens v. W. & S. Life Ins. Co.*, 717 F. App'x 412, 417 (5th Cir. 2018) (quoting *Gabarick v. Laurin Mar. (Am.), Inc.* 753 F.3d 550, 553 (5th Cir. 2014)). "A third consideration is 'whether absent estoppel "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party."'" *Occidental Petrol. Corp v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 648 (5th Cir. 2024) (quoting *In re 3 Star Props., L.L.C.* 6 F.4th 595, 605 (5th Cir. 2021)).

The judicial estoppel argument is unpersuasive. Even assuming that the element of "clearly inconsistent" positions is met,[5] there is no evidence in the record that the *Bowman* court accepted

---

[5] SWN and Independence Contract Drilling argue that their positions are not actually inconsistent because, among other issues with meeting this element of judicial estoppel, "[i]nvoking a Louisiana tort defense in a Louisiana tort action is not 'clearly inconsistent' with invoking bargained-for Texas law in a Texas-governed contract dispute." (Docket Entry No. 28 at 11). The court does not need to reach this issue because it concludes judicial estoppel does not apply on other grounds.

6

or adopted the argument that Louisiana law applied at any point before the case settled. St. Paul and Pipe Pros admit that the *Bowman* case settled before the Louisiana state court ruled on the motion for summary judgment. (Docket Entry No. 25 at 8; Docket Entry No. 30 at 4). There is no indication or argument that the Louisiana court relied on the argument that Louisiana law applied before the settlement was entered. (*See generally id.*). Without judicial acceptance of that argument, there is no judicial estoppel.[6] *See In re Little River Healthcare Holdings, L.L.C.*, No. 21-50616, 2022 WL 1568367, at *8 (5th Cir. 2022) ("Acceptance by the court requires 'that the first court [have] adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" (quoting *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004))); *accord Wilson ex rel. Stout v. Byrne*, No. 3:21-cv-2891-BN, 2023 WL 6884153, at *6 (N.D. Tex. Oct. 18, 2023) ("As there is no prior legal position accepted by a court concerning the trademark 'Campus ID's' ownership, judicial estoppel does not apply.").

St. Paul and Pipe Pros have also not identified how allowing SWN and Independence Contract Drilling to articulate an allegedly different choice-of-law argument than the one they asserted in the underlying case gives them the kind of unfair advantage that triggers judicial

---

[6] The cases Pipe Pros cites to argue that the mere attempt to induce reliance can be sufficient for judicial estoppel are inapposite. (Docket Entry No. 30 at 6). In *Hall v. GE Plastic Pac. PTE LTd.*, 327 F.3d 391, 396 (5th Cir. 2003), the Fifth Circuit affirmed the district court's determination that judicial estoppel applied both because (1) the appellant's current position was clearly inconsistent with a previous one that he successfully asserted in a previous suit, and (2) because it was "within the district court's discretion to utilize judicial estoppel to prevent [the appellant] from playing "fast and loose" with the court by "changing positions based on the exigencies of the moment." 327 F.3d at 400. The "exigencies of the moment" were that the appellant was trying to recover from a party that he had insisted was unnecessary in the first suit (and was essentially trying to obtain double recovery). Meanwhile, in *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1047 (5th Cir. 1998), the defendant made a "clear concession" in "open court" that no contract existed. 138 F.3d at 1047. There has been no similar kind of clear concession here as to an issue of fact. Finally, in *McLean v. Philip Morris USA Inc.*, 69 F. App'x 658, 2023 WL 21356017, at *2 (5th Cir. 2023), it is undisputed that the plaintiffs *did* "successfully persuade the district court" that Texas law applied, only to try to change their position in the same case after the district court concluded that Texas law barred most of their claims. The court sees no basis, in fact or law, to use its discretion to apply judicial estoppel in these circumstances.

estoppel.  "Unfair advantage" means more than simply arguing inconsistent positions.  *See, e.g.*, *Occidental Petrol. Corp.*, 117 F.4th at 639 (concluding—after determining that the district court had, in fact, relied on Wells Fargo's prior position—that Wells Fargo would derive an unfair advantage from reversing its position because Occidental Petroleum would be effectively left with "no recourse despite adapting its claims in the wake of the district court's initial ruling").  St. Paul simply argues that SWN would "derive a huge advantage" by taking inconsistent positions on Louisiana law in the two lawsuits, even though the prior litigation settled and did not produce procedural hurdles in this current litigation.  (Docket Entry No. 25 at 10).  The record does not show that SWN and Independence Contract Drilling have the requisite "unfair advantage" by presenting different choice-of-law arguments in the lawsuits arising from the well-site accident.  Judicial estoppel does not apply.

**B.    The Master Service Agreement (MSA) and the Texas Choice-of-Law Provision**

The next question is whether the MSA requires the application of the LOIA because the accident occurred at a Louisiana well site.  SWN and Independent Contract Drilling rely on the MSA's choice-of-law provision stating that Texas law applies to argue that the parties affirmatively opted to apply Texas law to an indemnity dispute, even if the accident occurred elsewhere.  The relevant MSA provisions state:

> **Choice of Law and Venue.**  The parties hereby consent to jurisdiction in Texas, and venue in Houston, Harris Country, Texas, for any and all proceedings whatsoever.  The parties agree that this Agreement and all Orders were negotiated in Houston, Texas, Indigo's principal office is in Houston Texas, and performance of this Agreement is, in part, in Houston, Texas (for example, indemnity and insurance provisions).
>
> The law of the State of Texas shall apply exclusive of (and without regard to any principles of conflicts of laws that would require application of the substantive laws of another jurisdiction, and Texas law shall apply and govern the relationship of the parties, the validity, interpretation, enforcement, and performance of this Agreement, any applicable Orders, any alleged acts or omissions of the Contractor

8

Group or Company Group, any claim arising out of the relationship between any member of the Contractor Group and the Company Group, and any claim arising directly or indirectly from the Agreement, any applicable Orders, or relating to the Dispute Resolution provision.

(Docket Entry No. 23-1 ₱ 23(B)).

Meanwhile, St. Paul argues that, despite this choice-of-law provision in Section 23(B), Section 19(B) "mandates" the application of Louisiana law. Section 19(B) provides:

> Louisiana Operations. Notwithstanding anything contained herein to the contrary, to the extent operations are performed in Louisiana (or offshore of Louisiana and maritime law is held inapplicable), or are subject to Louisiana law and the Louisiana Oilfield Indemnity Act ("LOIA") (La. Rev. Stat. § 9:2780, or any amendment or successor statute), then the following rights and obligations shall apply. Contractor agrees that, in return for payment of the applicable premium by Company, all of Contractor's insurance policies in at least the amount of the Minimum Liability Insurance Coverages shall name Company Group (as herein defined) as additional insureds there under, provide a waiver of subrogation in favor of Company Group, and be primary as respects any other coverage in favor of Company Group.

(Docket Entry No. 25 at 11 (quoting Docket Entry No. 25-2 ₱ 19(B))). St. Paul argues that "[t]his provision clearly asserts that the parties contemplated that work in Louisiana was subject to LOIA." (Docket Entry No. 25 at 12). Under St. Paul's reading, this language requires applying Louisiana law because the accident occurred during operations performed in Louisiana.[7]

The court disagrees with St. Paul. Section 19(B) states that "to the extent" that operations are performed in Louisiana law or are subject to Louisiana law, then certain contract obligations relating to obtaining insurance apply. This reference to Louisiana law does not operate as an affirmative choice-of-law clause for issues arising out of Louisiana drilling operations. Instead,

---

[7] St. Paul also passingly mentions Section 4 of the MSA, which deals with worker's compensation. (Docket Entry No. 25 at 14). Section 4 does not alter this court's analysis. It merely applies to cases where a contractor's employees are covered by the Louisiana Workers' Compensation Act, which SWN and Independence Contract Drilling argue was never operative here "in any meaningful sense" anyway because Bowman was not covered by the Louisiana Workers' Compensation Act and received Texas workers' compensation benefits through Pipe Pros' carrier. (Docket Entry No. 28 at 28).

this reference specifies certain kinds of insurance coverage to be obtained if operations occur in Louisiana or if Louisiana law applies.   The court also notes that Section 19(B) is phrased in this disjunctive; it discusses operations performed in Louisiana *or* that are subject to Louisiana law. Section 19(B) does not state that operations performed in Louisiana *are* subject to Louisiana law.

St. Paul argues that Section 19(B) "is very specific about how the parties intend to handle Louisiana anti-indemnity laws when operations are in Louisiana." (Docket Entry No. 29 at 6).  St. Paul's reading of the contract does not take into account Section 19(E), which states:

> The indemnity obligations each Party assumes under the terms of this Agreement are independent of the contractual insurance requirements set out above, and such indemnity obligations shall not be lessened or extinguished by reason of either Party's failure to obtain the required insurance coverage or by any defenses asserted by either Party's insurers.

(Docket Entry No. 25-2 at 16).  This provision clarifies the limited nature of the "notwithstanding" language of Section 19(B).  In addition, as noted above, Section 23(B) states that the performance of the indemnity and insurance provisions will take place in Houston, Texas.  (Docket Entry No. 23-2 at 16).  Reading the MSA as a whole, the court concludes that Section 19(B) neither acts as an affirmative Louisiana choice-of-law provision for indemnity issues arising out of operations in Louisiana nor negates the Texas choice-of-law provision for issues arising out of the indemnity obligations.  *See, e.g.*, *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 709 (Tex. App.—Texarkana 2018, pet. denied).

The cases St. Paul cites support this conclusion.  In *Sonat Exploration Co. v. Cudd Pressure Control Inc.*, the MSA at issue chose Texas law to apply to land operations in Texas and New Mexico.  271 S.W.3d 228, 231 (Tex. 2008).  The drilling site, however, was on land in Louisiana. *Id.*  One party then argued that the MSA "impliedly chose Louisiana law by two other provisions in the agreement that refer to work done in Louisiana."  *Id.* at 232.  The Texas Supreme Court

rejected that position, noting that the "indemnity provisions at issue" made no reference to Louisiana operations.[8]  *Id.*  Instead, the Texas Supreme Court went through the Restatement Section 188 analysis to conclude that Louisiana law applied.  *Id.* at 236.  The court cautioned that it "d[id] not hold . . . that Louisiana law should cover all indemnity disputes stemming from oilfield accidents there" and that "[w]hen a contract involves oilfield work in many states, sophisticated parties should generally be free to designate the law that will govern their relationship and have that choice respected."  *Id.*  In this case, not only did the parties choose Texas law to cover the entire contract, the indemnity provisions in Section 11 make no mention of Louisiana law; Section 19(E) limits Section 19(B); and Section 23(B) confirms that the parties intended Texas law to apply to indemnity disputes.  *Sonat* does not provide a basis for concluding that Section 19(B) operates as an affirmative choice-of-law clause.[9]

*Exco Resources, Inc. v. Cudd Pressure Control, Inc.*, St. Paul's other cited case, also undercuts its position that the parties affirmatively chose Louisiana law to apply to this indemnity dispute or that Section 19(B) neutralizes the choice-of-law provision in Section 23(B).  No. 05-14-01364-CV, 2016 WL 2726539 (Tex. App.—Dallas May 9, 2016, no pet.).  In *Exco Resources*, the Texas Court of Appeals found that contract language stating that "[n]otwithstanding anything to the contrary provided herein, to the extent, and only to the extent Louisiana law (specifically, the Louisiana Oilfield Anti-Indemnity Act) is found to govern the indemnity provisions found in

---

[8] Moreover, as in *Sonat*, the indemnity provision in this MSA (contained in Section 11) is printed in capital letters, which "appears to refer to Texas law (as it requires conspicuous notice) rather than Louisiana law (as it voids indemnities whether conspicuous or not)."  *Sonat*, 271 S.W.3d at 232.

[9] The most persuasive part of *Sonat* for St. Paul and Pipe Pros is that the Texas Supreme Court considered, when analyzing the Section 6 factors discussed below, that the Louisiana additional-insured provision in the contract at issue "suggested" that the parties expected trouble enforcing their indemnities there.  *See Sonat*, 271 S.W.3d at 235.  This part of *Sonat* neither mandates that Louisiana law applies nor is particularly applicable to even the Section 6 analysis, given that—unlike in *Sonat*—the parties explicitly bargained for Texas law for all operations, even if the contract contemplated that in some circumstances it may not apply.

11

Article IV.D.1 and IV.D.2," then the parties would substitute an indemnity provision that would be valid under Louisiana law.  2016 WL 2726539, at *5.  The Court of Appeals found that this provision meant that, in some circumstances, the parties had considered that Louisiana law would govern the indemnity provisions, which displaced the contract's Texas choice-of-law clause as to the indemnity issue in that case.  *Id.* at *6.  The *Exco* court did not conclude that Louisiana law applied based on the "notwithstanding" provision; instead, the court found that the parties "did not effectively choose Texas law to apply to the circumstances of this case."  *Id.*  The result was that the court looked to Section 188 of the Restatement—rather than Section 187(2)—to determine the applicable law that applied.  *Id.*  In *Exco*, the "notwithstanding" language was explicitly tied to the contractual indemnity provision at issue.  By contrast, Section 19(B) makes no mention of indemnity, and Section 19(E) states that Section 19(B) does not override the sections on indemnity.

At oral argument, the parties acknowledged that the MSA was inartfully drafted.  (Docket Entry No. 43); *see Bayou Indus. Sales, LLC v. Petro-Valve, Inc.*, No. 15-00283-BAJ-RLB, 2017 WL 5180321, at *7 n.7 (M.D. La. Nov. 8, 2027) ("This entire litigation could have been avoided had a more thorough contract been drafted.").  But the court cannot read Section 19(B) as either mandating the application of Louisiana law to this dispute or as negating the application of the Texas choice-of-law provision to the indemnity provision.  The court concludes that it must proceed through the Restatement § 187(2) choice-of-law analysis.[10]

---

[10] To the extent that St. Paul somewhat impliedly and alternatively argues that the court should only apply Section 188 of the *Restatement*, rather than Section 187(2), to this dispute because there is no affirmative choice-of-law clause as to indemnity for operations taking place in Louisiana, that dispute is ultimately immaterial because Section 188 is part of the Section 187(2) analysis.  The court concludes that the Section 188 analysis favors applying Texas law.

### C.    Choice of Law

The dispositive question is whether Texas or Louisiana law applies to the MSA.  If Texas law applies, St. Paul and Pipe Pros breached the MSA by failing to fully cover the settlement in the underlying *Bowman* case.  If Louisiana law applies, the LOIA voids the applicable indemnity provisions and negates the breach-of-contract claim.[11]  (Docket Entry No. 23-1 at 9).

Although the MSA's choice-of-law provision states that Texas law applies "without regard[]" to a choice-of-law analysis, SWN and Independence Contract Drilling concede that, while presumptively enforceable, choice-of-law provisions are still "subject to Restatement § 187(2)'s narrow exceptions on which the challenging party bears the burden."  (Docket Entry No. 23-1 at 14); *see Banta Oilfield Servs., Inc.*, 568 S.W.3d at 709 ("[W]hile courts generally honor contracting parties' bargained-for and expressed choice of law of which state's law governs the performance of a contract, the contracting parties' freedom to choose what state's law applies is not unlimited." (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990))); *accord Pipeline Supply & Serv., LLC v. Newman*, No. 25-3719, 2026 WL 654246, at *4–5 (S.D. Tex. Mar. 9, 2026).

"To render a choice-of-law provision unenforceable, a party must satisfy the standards of Section 187(2) of the Restatement (Second) of Conflict of Laws."  *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015).  The Restatement provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,[12] or

---

[11] The laws of Texas and Louisiana conflict.  "Under Texas law, oilfield indemnity clauses are valid if they are mutual and supported by liability insurance.  Under Louisiana law, such clauses are invalid if the party seeking indemnity was negligent or strictly liable."  *Sonat*, 271 S.W.3d at 231.

[12] There is no dispute that the first exception does not apply.  (Docket Entry No. 23-1 at 15; *see generally* Docket Entry Nos. 29, 30).

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2).  The second exception requires a three-part analysis.  Because the MSA "unambiguously mandates Texas law applies, . . . Louisiana law cannot override the [MSA] unless (1) it has a 'more significant relationship with the parties and transaction than Texas does'; (2) it has a 'materially greater interest than Texas in applying its law to this set of facts'; and (3) 'applying Texas law [would] be contrary to a fundamental policy of' Louisiana." *Anadarko Petrol. Corp. v. Alternative Env'l Sols., Inc.*, 169 F.4th 542, 548 (5th Cir. 2026) (quoting *Cannon Oil & Gas Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 189 (5th Cir. 2021)).  "[I]f . . . even one of the three factors favors the parties' choice of Texas law, [the court is] not compelled to examine the remaining two." *Banta*, 568 S.W.3d at 711.

"To determine which state has a more significant relationship, courts consider multiple contacts, including [1] the place of contracting, [2] the place of negotiation, [3] the place of performance, [4] the location of the subject matter of the contract, and [5] the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Anadarko Petrol. Corp.*, 169 F.4th at 548 (citing *Cardoni*, 805 F.3d at 582).  "These contacts are weighed not by their number, but by their quality." *Id.* at 548 (quoting *Cardoni*, 805 F.3d at 582).

These factors favor applying Texas law.  As to the first factor, Pipe Pros and St. Paul do not dispute that the MSA was drafted and signed in Texas.  (Docket Entry No. 23-1 at 18; *see generally* Docket Entry Nos. 29, 30).  As to the second factor, the MSA states that "[t]he parties

14

agree that this Agreement and all Orders were negotiated in Houston, Texas."[13]  (Docket Entry No. 23-2).  As to the fifth factor, the MSA states that Indigo's principal place of business was in Texas and that Pipe Pros was a Texas LLC.  (Docket Entry No. 25-2 at 1, ⁋ 23(B)).  Independence Contract Drilling has its principal place of business in Texas.  (Docket Entry No. 16; Docket Entry No. 20 ⁋ 1.2).  SWN was a Texas LLC headquartered in Texas until September 2025.  (Docket Entry No. 23-4 at 12–14; Docket Entry No. 23-15; Docket Entry No. 28-3).  TRK d/b/a Pipe Pros is domiciled in Wyoming,[14] (Docket Entry No. 10), and St. Paul is domiciled in Connecticut, (Docket Entry No. 37).  In short, there were Texas ties between the original parties to the MSA, and at least one party still has Texas ties.  There are no parties with Louisiana ties.

The third and fourth factors are closer.  On the one hand, Bowman was injured in Louisiana, and the underlying *Bowman* litigation took place in Louisiana.  But *Sonat* clarified that the place of the drilling and related litigation does not alone determine the place of performance and is not dispositive.  271 S.W.3d at 234.  Instead, when a contract contemplates work in multiple states (as this MSA does), this factor is potentially neutral.[15]   *Id.* ("As no single state would have 'loomed

---

[13] Pipe Pros argued in its response brief that the place of negotiation and contracting should be neutral because "neither party to this lawsuit took part in the negotiation or contracting" of the MSA, even though they are the successors-in-interest to those parties.  (Docket Entry No. 30 at 12).  It provided no caselaw for that assertion.  The court allowed Pipe Pros to file a supplemental brief if it could find caselaw to support that assertion.  (Docket Entry No. 43).  It could not do so.  (Docket Entry No. 42).

[14] As noted above, Pipe Pros's briefs are all entitled "TRK d/b/a as Pipe Pros."  The summary-judgment record indicated that Pipe Pros still exists as a separate LLC, however, with a principal place of business in Texas.  The court clarified this issue with the parties at the hearing and confirmed that TRK (which bought Pipe Pros in 2021) is the proper defendant and successor-in-interest to Pipe Pros under the MSA. (See Docket Entry No. 43).

[15] Pipe Pros cites the Court of Appeals case underlying *Sonat* to argue that the third factor is effectively dispositive.  (Docket Entry No. 30 at 11).  But the Texas Supreme Court explicitly disagreed with the part of the Court of Appeals opinion that Pipe Pros cites, holding that Section 196 does not apply to contracts contemplating services in many states and that, where a contract does so, "the contacts analysis suggests only that the law of several states might apply."  *Sonat*, 271 S.W.3d at 234.  The court also notes that the Restatement § 188 comments clarify that the place of performance bears little weight in the choice of the

large' in the parties' minds when signing this agreement, the contacts analysis suggests only that the law of several states might apply.").

In the years since *Sonat*, some Texas intermediate appellate courts have taken the view that "the central act of indemnification occurs in the forum where the personal injury lawsuit is pending." *Cannon Oil*, 20 F.4th at 190. But the place of performance in this case is complicated by multiple factors, distinguishing this case from either *Banta* or *Chesapeake Oper. Inc. v Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 173 (Tex. App.—Houston [14th Dist.] 2002, no pet.), the cases that *Cannon* cites for that proposition.

First, the MSA states that all insurance and indemnification provisions are to be performed in Houston, Texas. (Docket Entry No. 23-2 ⁋ 23(B)). St. Paul and Pipe Pros do not address this language in their briefs, but it weighs against finding that Louisiana is the only relevant place of performance. *See Banta Oilfield Servs.*, 568 S.W.3d at 712 (noting that the MSA referred to a Texas statute regulating indemnity). Second, Bowman is a Texas resident. (Docket Entry No. 23-8 at 20). Third, St. Paul maintains its file for Bowman's claim in Texas. (Docket Entry No. 23-19 at 7). Fourth, this litigation is taking place in Texas. *See Nabors Drilling Techs. USA Inc. v. Deepwell Energy Servs. LLC*, 568 F. Supp. 3d 756, 768 (S.D. Tex. 2021) (concluding that the place of performance factor favored Texas because the agreement stated that jurisdiction would lie exclusively in Texas; both the underlying litigation *and* the instant case were in Texas; the attorney's fees brought in both cases were and would be incurred in Texas; and "the impact of any indemnification . . . will be felt primary in Texas"). In short, to the extent that the overall question is simply "which state has the most significant relationship *with respect to the indemnity issue*,"

---

applicable law when (1) at the time of contracting it is either uncertain or unknown, or (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue. Restatement § 188 cmt. e.

16

*Chesapeake Oper. Inc. v Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 173 (Tex. App.—Houston [14th Dist.] 2002, no pet.), the record in this case does not clearly indicate that Louisiana is the answer, even though that was the location of the accident and underlying lawsuit. Based on this record, the court concludes that the third and fourth factors are effectively neutral.[16]

The Section 6 Restatement factors also tilt toward Texas. The most important factor in a contract case is "[p]rotection of the justified expectations of the parties." *Sonat*, 271 S.W.3d at 235. "[T]he parties' expectations as stated in their contract should not be frustrated by applying a state law that would invalidate the contract, at least not unless those expectations are substantially outweighed by the interests of the state with the invalidating rule." *Id.* "When a contract involves oilfield work in many states, sophisticated parties should generally be free to designate the law that will govern their relationship and have that choice respected." *Id.* at 236. In this case, the parties designated Texas law, and the MSA states that the place of performance for the indemnity obligations is in Texas. While choice-of-law clauses can be defeated in certain circumstances, the crux of this case is that Pipe Pros and St. Paul effectively "seek[] to repudiate that bargain to avoid … indemnification duties." *Nabors*, 568 F. Supp. 3d at 770. "Giving sanction to such a strategy would undermine the needs of the interstate and international systems of commerce by promoting uncertainty and increasing transaction costs." *Id.* The Section 6 factors favor applying Texas law.

Because the Restatement § 188 and § 6 factors favor Texas, the court concludes that Texas has the most significant interest in this case.[17] The court need not reach the other elements of the

---

[16] Pipe Pros concedes that the fourth factor is potentially neutral because the contract considered that work would occur in Louisiana and Texas. (Docket Entry No. 30 at 11 n.3).

[17] Pipe Pros argued at the motion hearing that under SWN and Independence Contract Drilling's reading of the MSA, Louisiana law could never apply. (Docket Entry No. 43). That is not true. Had Independence Contract Drilling had no Texas ties, had TRK had Louisiana ties, and had Bowman had Louisiana ties, among other potential alternative facts, this case might have been different.

§ 187(2) test. *See Nabors*, 568 F. Supp. 3d at 772. Regardless, the court concludes that Louisiana does not have a materially greater interest than Texas in applying its law to this set of facts. This lawsuit involves former and current Texas companies, no Louisiana companies, is based on injuries to a Texas citizen, and indemnity obligations that the MSA—which was drafted and negotiated in Texas—states are performed in Texas. The parties lack the ties to Louisiana that would give that state a materially greater interest than Texas, and, for the reasons explained below, the public policy factor is effectively neutral. *Cf. Wildhorse Res. Mgmt. Co., LLC v. G&C Const. Int'l, LLC*, No. CV H-18-2456, 2019 WL 5684228, at *5 (S.D. Tex. Oct. 31, 2019) (holding that Louisiana had a materially greater interest in the dispute because its interests "in protecting Louisiana contractors operating in Louisiana, and in seeing the application of Louisiana public policy being applied to Louisiana residents in Louisiana lawsuits arising out of injuries in Louisiana" were greater than Texas's interests); *see also Pipeline Supply & Serv., LLC*, 2026 WL 654246, at *6. Texas's interests in protecting the parties' choice of law and "fair bargaining by resident businesses" outweigh Louisiana's interest in voiding a contract between foreign companies based on litigation involving a Texas resident. *Chesapeake Oper., Inc.*, 94 S.W.3d at 176; *cf. Cannon Oil*, 20 F.4th at 194 (noting that Texas's interests in enforcing the contract at issue were "lessened when the contract was not negotiated, drafted, or performed within its borders"). At worst, "Texas has an equal interest in the resolution of this case as" Louisiana. *See Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 224 (5th Cir. 2020). This element of the § 187(2) test does not favor applying Louisiana law.

Finally, although the court need not reach this issue, the court addresses the element of public policy because it is the crux of St. Paul's motion for summary judgment. (Docket Entry No. 23). St. Paul argues that applying Texas law contravenes the LOIA and that it is a fundamental

18

public policy of Louisiana. (Docket Entry No. 25 at 13). But in 2002, the Texas Court of Appeals reviewed the relevant Texas and Louisiana statutes and statutory language and held that the fundamental policies of Texas and Louisiana are the same. *See Chesapeake Oper., Inc.*, 94 S.W.3d at 178–79. The Court of Appeals held that "[t]he test is whether the chosen law contravenes a state *policy*, not the *outcome* in a particular case." *Id.* at 178. Because the policies were the same, even if the Louisiana statute was stricter, there was no conflict. *Id. Chesapeake* also turned in part on the fact that the only Louisiana tie was the location of the well. *Id.* As in *Chesapeake*, this case does not concern a Louisiana contractor, operator, or resident. *Cf. Wildhorse Res. Mgmt. Co, LLC*, 2019 WL 5684228, at *6 (distinguishing *Chesapeake,* in which neither the contractor nor operator were Louisiana citizens, with the case before the court, in which "the contractor seeking protection of the LOIA is a Louisiana citizen who was operating in Louisiana when its employee— also a Louisiana citizen—was injured and sued in Louisiana courts").

In this case, Pipe Pros, the relevant contractor, signed the MSA as a Texas LLC; its interests are now controlled by a Wyoming corporation. Because Pipe Pros is not a Louisiana entity and has identified no connections to Louisiana, it is not "the type of oil and gas well sub-contractor for whom the Louisiana legislature specifically contemplated providing protection." *See Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 942 (5th Cir. 2000) (concluding that "the strength of Louisiana's public policy of preventing the adverse consequences which would fall upon its sub-contractors by application of the laws of Texas tips the scales which might otherwise be balanced with respect to each state's policies noted above"). There is no basis, given *Chesapeake* and *Roberts*, to conclude that applying Texas law to this dispute, in which the consequences will not fall on a Louisiana company, violates Louisiana's public policy.

Because none—let alone all three—of the § 187(2) factors favor applying Louisiana law, the Texas choice-of law-provision is enforceable.

**D.      Breach of Contract**

St. Paul and Pipe Pros do not dispute that if Texas law applies, they breached the MSA. (*See generally* Docket Entry Nos. 29, 30).  Pipe Pros simply argues that because there is no valid indemnity contract under Louisiana law, there can be no breach of contract.  (Docket Entry No. 30 at 13–14).  Because the court concludes that Texas law applies, it grants summary judgment to SWN and Independence Contract Drilling on their breach of contract claim and denies St. Paul's cross-motion for summary judgment.

Under Texas law, a breach of contract claim for indemnity has five elements.  "To prevail on a breach of indemnity agreement claim under Texas law, a plaintiff must establish that: (1) a contractual indemnity agreement exists; (2) the indemnity agreement obligates one party to indemnify the other for particular claims; (3) those claims were made; (4) all conditions precedent for recovery have occurred or been waived or excused; and (5) the party seeking relief has been damaged."  *Allied World Ins. Co. v. Am. W. Steel, LLC*, Civ. Action H-17-3608, 2018 WL 6602153, at *2 (S.D. Tex. Dec. 17, 2018) (citing *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995)).  "When the terms of an indemnity agreement are clear and unambiguous, Texas law gives effect to the agreement as written."  *Id.*

SWN and Independence Contract Drilling argue that each element is met because (1) St. Paul and Pipe Pros do not dispute (and the record establishes that) a contractual indemnity agreement exists; (2) the MSA requires Pipe Pros to defend and indemnify SWN and its contractors and to provide $1,000,000 in primary and $5,000,000 in excess liability coverage; (3) in the underlying litigation, Bowman filed personal injury claims that are covered under Section 11(A)

20

of the MSA; (4) there is no genuine factual dispute material to determining that St. Paul and Pipe Pros's defense, indemnity, and additional-insured obligations under the MSA and relevant policies have been triggered; and (5) St. Paul and Pipe Pros breached their obligations under the MSA (and caused damage) when they refused the defense and indemnity demands by SWN and Independence Contract Drilling for the *Bowman* litigation and settlement. (Docket Entry No. 23-1 at 27–28).

The court agrees with this analysis. First, there is a contractual indemnity agreement. Section 11(A) of the MSA ("Contractor's Indemnification of Company") and 11(B) ("Company's Indemnification of Contractor") set out the requisite indemnity provisions. (Docket Entry No. 23-2 ¶¶ 11A, 11B). These provisions required Pipe Pros to defend and indemnify SWN and Independence Contract Drilling from the personal injury claims in the *Bowman* suit and to provide $1,000,000 primary and $5,000,000 in excess liability coverage. (*Id.*; *see also* Docket Entry No. 4 ¶¶ 2–3). St. Paul's policies establish that it owed duties to SWN and Independence Contract Drilling. (Docket Entry No. 28-1; Docket Entry No. 23-6 at 1, 7, 16; Docket Entry No. 23-7 at 1,7, 19). SWN demanded that Pipe Pros indemnify it for the claims in the *Bowman* suit, (Docket Entry No. 23-9), and St. Paul refused to do so, (Docket Entry No. 23-13). *Bowman* settled on confidential terms, (Docket Entry No. 23-14 at 7), but there is no dispute that SWN and Independence Contract Drilling would not have contributed their half of the settlement if St. Paul and Pipe Pros had not breached the contract.

Based on the undisputed record, SWN and Independence Contract Drilling are entitled to summary judgment on their breach-of-contract claim. Pipe Pros and St. Paul are liable to SWN and Independence Contract Drilling for the 50% of the confidential settlement amount that SWN and Independence Contract Drilling paid to settle the underlying litigation and their associated attorneys' fees and costs in defending the underlying suit and in defending this suit.

**IV.    Conclusion**

The court grants SWN and Independence Contract Drilling's motion for summary judgment, (Docket Entry No. 23), and denies summary judgment to St. Paul and Pipe Pros, (Docket Entry No. 25).  No later than July 17, 2026, the parties must file a joint status update informing the court as to whether any triable issues remain.

SIGNED on June 29, 2026, at Houston, Texas.

_____

Lee H. Rosenthal
Senior United States District Judge